SO ORDERED.

Dated: November 22, 2017

Daniel P. Collins, Chief Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | Chapter 13 Proceedings |
|---|---|
| LOUIS ELIAS MEJIA and CINDY LYN ZUMSTEIN, | Case No. 3:16-bk-04842-DPC |
| Debtors. | UNDER ADVISEMENT ORDER RE ATTORNEYS' FEES |
| | [NOT FOR PUBLICATION] |

Before the Court is Louis Elias Mejia and Cindy Lyn Zumstein's ("Debtors") Motion ("Claim Objection") to Determine Amount of Allowed Claim for Post-Petition Attorneys' Fees Under 11 U.S.C. § 506(B) for JASSMR Corporation ("JASSMR") (DE 136)[1]. Except for all its claimed attorneys' fees, JASSMR was paid all amounts owed to it when JASSMR's collateral was sold in July 2017. Debtors contend JASSMR should be paid attorneys' fees of no more than the $4,500 it has already been paid. JASSMR contends it should be allowed additional fees in the amount of $56,487.75 plus unpaid adequate protection payments of $3,000. This Court now finds JASSMR is not now entitled to any adequate protection payments but is hereby awarded additional attorneys' fees of $20,500.

**I. BACKGROUND**[2]

1. Debtors filed their chapter 13 petition on May 2, 2016 ("Petition Date") (DE 1). Property of Debtors' bankruptcy estate included real property identified as 3185 Hidden Hollow Road, Flagstaff, Arizona (the "Property"). Debtors' bankruptcy schedules list the Property value as $560,000. (DE 34). Debtors concede JASSMR held a valid and perfected first lien against the Property. (DE 136, p. 1 of 13).

---

[1] "DE" shall hereafter refer to docket entries in the administrative file in this bankruptcy case.

[2] This Order sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Rules of Bankruptcy Procedure.

1

2. JASSMR filed its claim with this Court (Claim #10) on July 14, 2016, asserting a secured claim against the Property as of the Petition Date in the amount of $451,924.25 which included pre-petition fees and costs in the amount of $2,061.74. The Promissory Note ("Note") attached to that claim includes the following language:

> Should suit be brought on this Note, the undersigned … promises to pay … reasonable attorney's fees.

The Deed of Trust ("DOT") securing the Note recognizes that attorneys' fees may be assessed as a part of JASSMR's secured claim against the Property. *See*, e.g., Claim #10, p. 8 of 21, ¶ 3 and p. 10 of 21, ¶ 11.

3. Debtors filed their chapter 13 plan ("1st Plan") on June 15, 2016 (DE 36) calling for a sale of the Property for about $560,000 and payment of JASSMR's secured claim in the amount of about $450,000. JASSMR objected to the 1st Plan contending, among other things, that the 1st Plan was filed in bad faith. (DE 45).

4. On August 8, 2016, JASSMR filed a motion ("Stay Lift Motion") seeking this Court's order lifting the bankruptcy automatic stay. (DE 56). Debtors responded. (DE 63). A preliminary hearing was set for September 7, 2016.

5. On August 18, 2016, Debtors filed their motion ("1st Sale Motion") seeking this Court's order approving a sale of the Property for $625,000 to Ryan H. Wixom and Michaela M. Wixom (the "Wixoms"). (DE 61). JASSMR objected to the 1st Sale Motion claiming the sale was not likely to close and that the 1st Sale Motion was not proposed in good faith. (DE 67). In its objection, JASSMR claimed it was owed attorneys' fees and costs in the amount of $15,752.24. JASSMR later filed an amended objection to the 1st Sale Motion attaching an August 26, 2016 appraisal of the Property reflecting an "as is" value of the Property at $590,000. (DE 69). The appraisal indicated certain repairs to the Property were in process and would required $5,000 to $10,000 to complete, at which time the Property would then be worth $600,000. *See* DE 69, p. 4 of 22. The appraisal indicated "the subject improvements [to the Property] were in good condition . . ." DE 69-1, p. 3 of 22.

6. This Court held a hearing on September 16, 2016, on the 1st Sale Motion. (DE 72). Over JASSMR's objection, the Court approved the 1st Sale Motion but required that sale to close by November 15, 2016. (DE 72).

7. The preliminary hearing on JASSMR's Stay Lift Motion was continued several times but was eventually held on November 18, 2016. (DE 81). At that hearing it was reported that the proposed sale to the Wixoms failed to close. JASSMR also suggested the inspection report obtained by the Wixoms reflected numerous problems with the Property which caused the Wixoms to back out of their purchase contract. Continued preliminary hearings were held on December 19, 2016 and January 27, 2017, at which time JASSMR expressed frustration that it was not able to gain entry to the Property to conduct an inspection and that the Debtors had not yet listed the Property for sale. (DEs 94 and 111). At the hearing held on January 27, 2017, the Court set a final evidentiary hearing on the Stay Lift Motion for March 17, 2017. The Court directed the Debtors to permit JASSMR's inspection of the Property within two weeks. The Court also expressed its displeasure due to Debtors' failure to retain a real estate broker to sell the Property. (DE 111).

8. On February 6, 2017, Debtors filed an application to employ Geanne Shanahan of Russ Lyon Sotheby's International Realty as their real estate agent. (DE 112). The Court approved this employment by order dated February 6, 2017. (DE 114).

9. On February 7, 2017, Debtors filed their motion ("2nd Sale Motion") to approve a sale of the Property to Bryce Lee Jackson for $540,000. (DE 115). The second sale motion was heard on March 8, 2017 (DE 124), and approved by order of this Court dated March 15, 2017 ("2nd Sale Order"). (DE 126). The 2nd Sale Order called for payment of all amounts owed to JASSMR less attorneys' fees, but that the sum of $42,231.86[3] was to be held in escrow pending resolution of the fee dispute. The 2nd Sale Order was later amended ("Amended Sale Order") by agreement of the parties and submitted for the Court's approval on July 24, 2017. (DE 154). The Amended Sale Order, among other things, indicated that if the amount of funds in escrow was

---

[3] This was the amount JASSMR was then contending its fees and costs totaled at that point.

3

insufficient to fully pay JASSMR's allowed fees, "the remaining balance due shall be treated as a secured claim in Debtors' Chapter 13 Plan." (DE 154, p. 3 of 4).

10. The March 17, 2017 final hearing on JASSMR's Stay Lift Motion was vacated. (DE 135). JASSMR and the Debtors entered into a stipulation for, among other things, adequate protection payments to begin on April 25, 2017, for the sale to close by July 31, 2017, and for stay relief. (DE 144). That stipulation was approved by the Court on June 16, 2017. (DE 152).

11. Debtors objected to JASSMR's Claim #10 on May 5, 2017. (DE 136). JASSMR responded to the Claim Objection on May 31, 2017. (DE 146).

12. In July 2017, Debtors closed their sale of the Property. At closing, JASSMR was paid the full amount of their Claim #10 (i.e. $451,924.25)[4], plus all interest due, plus late fees of $1,328.60, plus appraisal costs of $600, legal costs totaling $425.16, insurance costs of $1,978.92, and post-petition attorneys' fees of $4,500. After these payments to JASSMR and payment of escrow closing fees and costs, the IRS's junior lien was paid the amount of $25,127.06[5] which sum fully satisfied the IRS's priority claim that had been asserted in the amount of $64,842.77 (*see* Claims Register, Claim # 3). From the pleadings submitted by the parties, it is unclear how much money, if any, remains on hand from the closing of the sale of the Property. The Debtors' 2nd Plan indicate it expects $16,196.71 to be paid into the 2nd Plan from the Sale of the Property but that may or may not be the amount retained post-closing to deal with JASSMR's additional fee claims. *See* DE 168, p. 2 of 8, ¶ (A)(2).

13. JASSMR filed its supplemental fee application on August 1, 2017 (DE 155), seeking additional fees of $15,205.25 from May 12, 2017 through July 31, 2017. This sum is in addition to the $45,782.50 sought from the Petition Date through May 18, 2017. (DE 146). JASSMR acknowledged its bills contain errors totaling $852.50 (DE 146) and that $537.50 is duplicated from prior bills. (DE 155-1). Since $4,500 in fees were paid at closing, the attorneys' fees now sought by JASSMR total $56,487.75. JASSMR also seeks an award of $3,000 which reflects the amount of adequate protection payments approved by the Court (DE 152), but not paid by Debtors prior to closing.

---

[4] This amount includes payment of JASSMR's pre-petition fees and costs in the amount of $2,061.74.
[5] This amount is reflected in Debtors' 1st Amended Chapter 13 Plan ("2nd Plan") (DE 168, p. 7 of 8, ¶ J(2)).

4

14. On August 18, 2017, Debtors filed their reply (DE 161) to JASSMR's supplemental fee application. The Court took this matter under advisement on August 19, 2017.

15. Debtors filed their 2nd Plan on October 13, 2017. (DE 168). To date, Debtors have failed to confirm a chapter 13 plan.

## II. ISSUES

1. Is JASSMR entitled to an award of $3,000 due to Debtors' failure to pay adequate protection payments prior to closing?

2. What is the reasonable amount of JASSMR's attorneys' fees incurred since the Petition Date?

## III. JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334.

## IV. APPLICABLE LAW

It is now this Court's task to determine whether the fees sought by JASSMR are reasonable. In the case of *In re Kord Enterprises II*, 139 F. 3d 684 (9th Cir. 1998), the Court held that under § 506(b):

> [t]he creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement.

*Id.* at 687.

The parties agree JASSMR is oversecured and is entitled to reasonable attorneys' fees incurred during these bankruptcy proceedings[6] and that any such allowed fees must be treated as a secured obligation in Debtors' Chapter 13 Plan. Section 506(b)[7] of the Bankruptcy Code provides for allowance of such fees. The Note and DOT call for payment of the noteholder's reasonable attorneys' fees.

---

[6] *See* DE 144, ¶ 3, p. 3 of 5.
[7] Unless indicated otherwise, statutory citations herein refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

5

"A creditor has the burden of proof to establish the reasonableness of fees and costs pursuant to 11 U.S.C. § 506(b) or any other appropriate statute." *In re Ransom*, 361 B.R. 895, 898 (Bankr. D. Mont. 2007). *See also In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir.1998). In the Ninth Circuit, the primary method used to determine a reasonable fee in bankruptcy cases is to calculate the lodestar. *Law Offices of David A. Boone v. Derham-Burk* (*In re Eliapo*), 468 F.3d 592, 598 (9th Cir. 2006); *Yermakov v. Fitzsimmons* (*In re Yermakov*), 718 F.2d 1465, 1471 (9th Cir. 1983).

> "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales* [*v. City of San Rafael*, 96 F.3d 359, 363 amended 108 F.3d 981 (9th Cir. 1997)]. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A compensation award based on the lodestar is a presumptively reasonable fee. *In re Manoa Fin. Co.*, 853 F.2d 687, 691 (9th Cir. 1988).
>
> In rare or exceptional instances, if the court determines that the lodestar figure is unreasonably low or high, it may adjust the figure upward or downward based on factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). *Morales*, 96 F.3d at 363-64.
>
> The original *Kerr* factors include:
>
> (1) the time and labor required,
> (2) the novelty and difficulty of the questions involved,
> (3) the skill requisite to perform the legal service properly,
> (4) the preclusion of other employment by the attorney due to acceptance of the case,
> (5) the customary fee,
> (6) whether the fee is fixed or contingent,
> (7) time litigations imposed by the client or the circumstances,
> (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys,
> (10) the "undersirability" of the case,
> (11) the nature and length of the professional relationship with the client, and
> (12) awards in similar cases.
>
> *Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

6

> However, some of the *Kerr* factors have been subsumed as a matter of law within the initial lodestar calculation and should be taken into account in either the reasonable hours component or reasonable hourly rate component. *Morales*, 96 F.3d at 363-64 & nn. 8-9. These include (1) the novelty and complexity of the issues, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); (2) the special skill and experience of counsel, *id.*; (3) the quality of representation, *id.*; (4) the results obtained, *id.*; and (5) the contingent nature of the fee agreement, *City of Burlington *417 v. Dague*, 505 U.S. 557, 565-67 (1992). These subsumed factors may not act as independent bases for adjustments to the lodestar figure. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 n. 4 (9th Cir. 1987).

*In re Parreira*, 464 B.R. 410, 416-17 (Bankr. E.D. Cal. 2012)

As retired Bankruptcy Judge Marlar once noted "[t]o the extent that a creditor wishes to expend such resources [legal fees], that is a business decision which it is free to make. However, a creditor may not run the engine at full throttle and expect its borrower to pay the entire fuel bill." At bottom, a court's review of attorney's fees largely rests with this trial court's sound discretion.

## V. <u>ANALYSIS</u>

Debtors contend this Chapter 13 case is straightforward and that JASSMR unnecessarily piled on legal fees. Debtors point to their early recognition of JASSMR's oversecured claim and their 1st Plan which called for a sale of the Property, which sale would fully satisfy JASSMR's secured claim. Debtors also contend they offered to provide adequate protection payments on June 2, 2016, and again in February 2017 (*see* DE 161, p. 4 of 12). JASSMR's counsel has no recollection of those proposals. JASSMR contends the Debtors' Chapter 13 proceeded in bad faith, the 1st Sale Motion was an illusion, the Debtors ran up JASSMR's legal fees by blocking JASSMR's inspection of their collateral, that the Debtors failed to pay real estate taxes and insurance so JASSMR needed to step in to do so, that the Debtors' failure to pay their income taxes which resulted in an IRS tax lien on the Property, that Debtors were not serious about selling the Property until after they filed their February 2017 application to employ a real estate broker

7

and that Debtors wasted JASSMR's time and money be entering into an adequate protection stipulation which they promptly violated. In certain respects, both parties are correct.

This Court finds the Debtors did dither in their efforts to sell the Property. Several times in late December 2016 and January 2017, the Court admonished Debtors for their continued failure to hire a real estate broker. The Debtors did not seek to employ a real estate broker until nine months into this Chapter 13 case. This delayed the ultimate sale of the Property and increased JASSMR's attorneys' fees. The Debtors' failure to pay real estate taxes and insurance and their failure to comply with their adequate protection stipulation also caused JASSMR to incur additional fees. However, although the existence of the pre-petition IRS tax lien against the Property proved to be inconvenient to JASSMR, it was not a post-petition misdeed by the Debtors. That JASSMR felt compelled to allow the IRS to be paid $25,127.06 from the sale did not harm JASSMR because JASSMR is to be treated as a secured creditor for all amounts this Court allows for JASSMR's reasonable fees. Nonetheless, JASSMR did incur attorneys' fees related to dealing with the IRS lien at closing. JASSMR also reasonably incurred fees when it filed and partially prosecuted its Stay Lift Motion and its objection to the 1st Sale Motion. JASSMR is entitled to an award of reasonable fees related to each of these issues. The principal question for this Court to resolve is what amount of fees is reasonable to allow JASSMR for legal fees incurred in connection with this bankruptcy case.

### A. The Missed Adequate Protection Payments

This Court finds the adequate protection payment amounts not paid by Debtors pursuant to their stipulation with JASSMR were fully paid at closing. Under the terms of the stipulation, the Debtors' adequate protection payments were to be "applied first to late fees owing, then to costs and advanced impounds expended, then to principal and interest due and owing." (DE 144, ¶ 5 p. 3 of 5). All of these amounts were satisfied at closing. The adequate protection payments were effectively made at closing, albeit late and after Debtors breached the terms of their stipulation. Accordingly, JASSMR's post-closing demand for $3,000 in adequate protection payments is hereby denied.

### B. JASSMR's Fees From the Petition Date Through May 26, 2017

JASSMR's lawyers billed JASSMR on an hourly basis for all work in these bankruptcy proceedings. Most of the work was billed by attorney Frederic Lemberg ("FL")[8] at his rate of $325 per hour. Others professionals billing JASSMR include Kevin Blood ("KB") at $150 per hour, Dean Brekke ("DB") at $310 per hour, Mark E. Andersen ("MEA") at $280 per hour, Carl Updike ("CU") at $165 per hour, Lisa Misner-Skozen ("LM") at $310 per hour and Mary Smith ("MS") at $165 per hour. All of these lawyers and paralegals are associated with the Firm. The Firm also engaged the services of a "contract paralegal", Arla Hawkins, J.D. ("AH") at $165 per hour. Debtors do not challenge the Firm's rates or the rates of AH. The Court finds all these hourly rates reasonable for the persons billing time, for the work pursued and given that the work was carried out in the bankruptcy community of Phoenix, Arizona. Collectively these lawyers and paralegals billed and seek this Court's allowance of fees in the amount of $45,782.59 from the Petition Date through May 26, 2017. This amount reflects a "deduction for the $852.50 that was improperly billed to the Bankruptcy matter."[9]

Before reviewing the Firm's bills, the Court notes the Firm's pleading caption references five lawyers involved in this bankruptcy proceeding. The Court finds this extraordinary for counsel representing an oversecured residential lien creditor with a pre-petition claim barely over $450,000. Reviewing the Firm's bills somewhat confirms the suspicion that this matter was overstaffed by the Firm. Although attorneys handling the probate piece of the JASSMR representation would naturally need to stay informed of progress made in the bankruptcy court, the Court finds the Firm billed excessively in doing so. The Court also finds that, while use of paralegal time can be an efficient means of accomplishing necessary work for a client, the Firm's use of internal and external paralegals primarily served to duplicate billings of the Firm's lawyers, especially the billings of FL. The Court hereby denies all billing of the contract paralegal AH

---

[8] All billing by members of the Andersen PLLC law firm ("Firm") contain descriptions of the billing activity, the time billed in increments of one tenth of an hour, the initials of the billing professional, and the total charge for the described tasks. The Court will use the initials of the billing professional when commenting on the billings of the Firm since this is how the bills themselves identify the billing professionals.

[9] The Firm's bills refer to its file number "00526-Bleak, Clyda --- Mortgage" as the "Bankruptcy" matter. The Firm was also handling probate matters for JASSMR in State Court. The Note held by JASSMR was an asset of that probate estate.

9

and denies the billings of CL to the extent of all but $858 (5.2 hours at $165 per hour in invoice #3986).

The fee statement for AH from May 18, 2016 to May 18, 2017, is attached as Exhibit A (DE 146-1) to JASSMR's response (DE 146) to the Claim Objection. AH's bills total $11,055 based on 67 hours billed at $165 per hour. A review of AH's bills reveal an extraordinary amount of time spent on fairly routine tasks. For example, between August 1, 2016 and August 9, 2016, AH billed 21.6 hours to conduct research on filing a motion for relief from stay, for assembling exhibits and drafting the Stay Lift Motion. This Court has reviewed many stay lift motions since joining the bench nearly five years ago and in 30 years of prior practice prosecuted and defended many stay lift motions. Motions seeking stay relief are generally straightforward, especially where the movant holds a first lien on residential property. Such stay relief motions can almost always be prepared in two to five hours. AH's 21.6 hours suggest either a lack of familiarity with such motions or an excessively heavy billing pencil. FL also billed at least 1.2 hours related to preparation of JASSMR's Stay Lift Motion and MEA billed another .3 hours.

The over billing and duplicate billing related to the Stay Lift Motion is a pattern that repeats itself in all AH's bills reviewed by the Court. To the extent AH's efforts actually provided value to the Firm's efforts on behalf of JASSMR, the Firm then billed additional amounts that were duplicative of AH's efforts. This pattern leads the Court to conclude that AH's bills must be entirely disregarded. The entire $11,055 charged by AH (DE 146-1) is hereby disallowed.

The Firm's bills from the Petition Date through May 26, 2017, are attached as Exhibit C (DE 146-3) to JASSMR's response (DE 146) to the Claim Objection and total $36,130.30. Exhibit C is comprised of 24 invoices, two of which are for charges entirely pre-petition. Those pre-petition bills ($2,061.74) were included in JASSMR's Claim #10 and were fully satisfied at closing. The costs reflected in Exhibit C ($402.80) were also fully satisfied at closing. The 22 remaining invoices include fees in the aggregate amount of $34,594.50. The Court addresses the fee component of each of these invoices below.

(i) <u>Invoice #3986 dated June 14, 2016, totaling $3,225</u>.

This is the Firm's invoice pertaining to the bankruptcy filed by the Debtors on May 2, 2016. The Firm's attorneys understandably held numerous meetings discussing the implications of the Debtors' bankruptcy on the probate proceedings in State Court and how best to proceed in the bankruptcy case. The Court finds all billings on this invoice to be reasonable and necessary. The sum of $3,225 is hereby allowed.

(ii) <u>Invoice #4157 dated June 29, 2016, totaling $1,139.50</u>.

Beginning with this invoice, the Court finds the time charged by CU is duplicative of efforts by other professionals at the Firm and that CU's efforts provided no material benefit to JASSMR or at least are not reasonably assessed to Debtors as a part of JASSMR's secured claim. Accordingly, all of CU's billings on this invoice and every invoice hereafter will be disallowed. Invoice #4157 is otherwise reasonable. This invoice is reduced by $165. The sum of $974.50 is hereby allowed.

(iii) <u>Invoice #4263 dated July 14, 2016, totaling $2,077</u>.

CU billed 4.9 hours at $165 per hour ($808.50) on this invoice, all of which is disallowed. All other billings on this invoice are reasonable. The sum of $808.50 is disallowed, but $1,268.50 is hereby allowed.

(iv) <u>Invoice #4312 dated July 29, 2016, totaling $1,005</u>.

CU billed 2.6 hours at $165 per hour ($429) on this invoice, all of which is disallowed. On July 13, 2016, FL billed .7 hours ($227.50) to prepare a plan confirmation objection and a proof of claim. He billed an additional 1.6 hours ($520) to do the same thing on July 14, 2016. The Court finds a total of 1.0 hour ($325) is reasonable. FL's time of 2.3 hours on this invoice is reduced by 1.3 hours at $325 per hour or $422.50. In summary, $851.50 is disallowed but $153.50 is hereby allowed.

(v) <u>Invoice #4403 dated August 12, 2016, totaling $1,028.50</u>.[10]

CU billed 1.5 hours at $165 per hour ($247.50) on this invoice, all of which is

---

[10] The Firm's invoices often omit a monthly summary of time and charges for each billing professional. As a result, the Court's billing review task became unnecessarily tedious. The Court has tallied amounts but understands there could be mathematical errors which may have been avoided had the invoices provided such summaries.

11

1  disallowed. All other billings on this invoice are reasonable. The sum of $247.50 is disallowed, but $781 is hereby allowed.

   (vi) <u>Invoice #4523 dated August 31, 2016, totaling $1,686</u>.

   CU billed 1.9 hours at $165 per hour ($313.50) on this invoice, all of which is disallowed. FL's August 12, 2016 charges of .4 hours ($130) and August 19, 2016 charges of .3 hours ($97.50) have nothing to do with JASSMR's interests in the Debtors' bankruptcy and are disallowed. MEA's August 23, 2016 charge of .7 hours at $280 per hour ($196) has not been shown to have any pertinence to this bankruptcy case and will be disallowed. All other billings on this invoice are reasonable. The sum of $737 is disallowed, but $949 is hereby allowed.

   (vii) <u>Invoice #4659 dated September 14, 2016, totaling $2,118</u>.

   CU billed 2.5 hours at $165 per hour ($412.50) on this invoice, all of which is disallowed. FL's September 7, 2016 billings ($162.50) are not reasonable and have not been shown to be of value in this matter and, therefore, will be disallowed. All other billings on this invoice are reasonable. The sum of $575 is disallowed, but $1,543 is hereby allowed.

   (viii) <u>Invoice #4781 dated September 29, 2016, totaling $3,384.50</u>.

   CU billed .7 hours at $165 per hour ($115.50) on this invoice, all of which is disallowed. From September 4, 2016 to September 16, 2016 FL billed 9.5 hours ($3,185) to prepare for and attend a non-evidentiary sale hearing. The Court denied JASSMR's objections to that sale. The Court finds a reasonable charge for this work would be 2 hours ($650). The amount of $2,535 is disallowed. All other billings on this invoice are reasonable. The total sum of $2,650.50 is disallowed, but $734 is hereby allowed.

   (ix) <u>Invoice #5043 dated October 31, 2016, totaling $33</u>.

   CU billed .2 hours at $165 per hour ($33) on this invoice, all of which is disallowed. The entire invoice of $33 is disallowed.

   (x) <u>Invoice #5154 dated November 14, 2016, totaling $582</u>.

   All billings on this invoice are reasonable. The sum of $582 is hereby allowed.

   (xi) <u>Invoice #5297 dated November 30, 2016, totaling $2,112.50</u>.

   CU billed .2 hours at $165 per hour ($33) on this invoice, all of which is

12

Case 3:16-bk-04842-DPC Doc 182 Filed 11/22/17 Entered 11/22/17 17:30:03 Desc
Main Document Page 12 of 20

1 disallowed. The Court finds FL's 2.6 hours ($845) billed on November 17 and 18, 2017 for preparation and attendance at a short preliminary hearing is excessive. The amount of $325 would have been reasonable. On November 21, 2016, FL billed 1.1 hour ($357) to attend a state court hearing. This is disallowed. FL billed .2 hours ($65) to consider a lot split having nothing to do with JASSMR's collateral. That shall be disallowed. All other billings on this invoice are reasonable. The sum of $975 is disallowed, but $1,137.50 is hereby allowed.

        (xii)    <u>Invoice #5425 dated December 14, 2016, totaling $1,239.50</u>.

CU billed .1 hour at $165 per hour ($16.50) on this invoice, which is disallowed. FL's file memo on December 8, 2016 at .5 hours ($162.50) and conference with legal assistant at .2 hours ($65) are not reasonable charges and are disallowed. All other billings on this invoice are reasonable. The sum of $244 is disallowed, but $995.50 is hereby allowed.

        (xiii)    <u>Invoice #5554 dated December 29, 2016, totaling $1,494</u>.

CU billed .3 hours at $165 per hour ($49.50) on this invoice, all of which is disallowed. FL's time of 2.7 hours ($877.50) spent on December 16 and 19, 2016 to prepare for and attend a status hearing is excessive. One hour ($325) shall be allowed and the remaining time totaling $552.50 will be disallowed. FL's December 28, 2016 charge of .6 hours ($195) will be disallowed as it does not pertain to JASSMR's collateral. All other billings on this invoice are reasonable. The sum of $797 is disallowed, but $697 is hereby allowed.

        (xiv)    <u>Invoice #5760 dated January 13, 2017, totaling $293</u>.

CU billed .2 hours at $165 per hour ($33) on this invoice, all of which is disallowed. FL's .1 hour ($32.50) spent on January 4, 2017, to review a brief not pertaining to JASSMR's interests is disallowed. All other billings on this invoice are reasonable. The sum of $65.50 is disallowed, but $227.50 is hereby allowed.

        (xv)    <u>Invoice #5835 dated January 31, 2017, totaling $2,288.50</u>.

CU billed 1.3 hours at $165 per hour ($214.50) on this invoice, all of which is disallowed. FL's January 27, 2017 court appearance billed at 3.1 hours ($1,007.50) is an excessive charge. The Court will disallow 2.1 hours ($682.50). All other billings on this invoice are reasonable. The sum of $897 is disallowed, but $1,391.50 is hereby allowed.

(xvi) <u>Invoice #5968 dated February 14, 2017, totaling $2,382</u>.

CU billed 1.6 hours at $165 per hour ($264) on this invoice, all of which is disallowed. On January 31, 2017, FL spent .3 hours ($97.50) billing for time spent assigning a task to a legal assistant. The assistant billed .1 hour for that discussion. FL's time is excessive and will be disallowed. All other billings on this invoice are reasonable. The sum of $361.50 is disallowed, but $2,020.50 is hereby allowed.

(xvii) <u>Invoice #6126 dated February 28, 2017, totaling $2,995.50</u>.

CU billed 5.8 hours at $165 per hour ($957) on this invoice, all of which is disallowed. On February 23, 2017, FL billed 1.1 hours ($357.50) to review legal bills, all of which are not reasonably billed and will be disallowed. FL also billed .2 hours ($65) on February 24, 2017, for essentially the same thing. That amount will also be disallowed. All other billings on this invoice are reasonable. The sum of $1,379.50 is disallowed, but $1,616 is hereby allowed.

(xviii) <u>Invoice #6262 dated March 14, 2017, totaling $2,237</u>.

CU billed 1.4 hours at $165 per hour ($231) on this invoice, all of which is disallowed. All other billings on this invoice are reasonable. The sum of $231 is disallowed, but $2,006 is hereby allowed.

(xix) <u>Invoice #6425 dated March 31, 2017, totaling $531.50</u>.

CU billed .5 hours at $165 per hour ($82.50) on this invoice, all of which is disallowed. FL billed .1 hour ($32.50) on March 21, 2017, for a matter unrelated to JASSMR's interests in the Debtors' bankruptcy. This amount is disallowed. All other billings on this invoice are reasonable. The sum of $115 is disallowed, but $416.50 is hereby allowed.

(xx) <u>Invoice #6745 dated April 28, 2017, totaling $326.50</u>.

CU billed .6 hours at $165 per hour ($99) on this invoice, all of which is disallowed. All other billings on this invoice are reasonable. The sum of $99 is disallowed, but $227.50 is hereby allowed.

(xxi) <u>Invoice #6911 dated May 12, 2017, totaling $1,878.50</u>.

CU billed 1 hour at $165 per hour ($165) on this invoice, all of which is

Case 3:16-bk-04842-DPC    Doc 182    Filed 11/22/17    Entered 11/22/17 17:30:03    Desc
Main Document    Page 14 of 20

disallowed. All other billings on this invoice are reasonable. The sum of $165 is disallowed, but $1,713.50 is hereby allowed.

Summary of Exhibit A (DE 146-3) Attorneys' Fee Adjustments

|     | Invoice # | Billed | Disallowed | Net Allowed |
| --- | --- | --- | --- | --- |
| i | 3986 | 3,225.00 | 0.00 | 3,225.00 |
| ii | 4157 | 1,139.50 | 165.00 | 974.50 |
| iii | 4263 | 2,077.00 | 808.50 | 1,268.50 |
| iv | 4312 | 1,005.00 | 851.50 | 153.50 |
| v | 4403 | 1,028.50 | 247.50 | 781.00 |
| vi | 4523 | 1,686.00 | 737.00 | 949.00 |
| vii | 4659 | 2,118.00 | 575.00 | 1,543.00 |
| viii | 4781 | 3,384.50 | 2,650.50 | 734.00 |
| ix | 5043 | 33.00 | 33.00 | 0.00 |
| x | 5154 | 582.00 | 0.00 | 582.00 |
| xi | 5297 | 2,112.50 | 975.00 | 1,137.50 |
| xii | 5425 | 1,239.50 | 244.00 | 995.50 |
| xiii | 5554 | 1,494.00 | 797.00 | 697.00 |
| xiv | 5760 | 293.00 | 65.50 | 227.50 |
| xv | 5835 | 2,288.50 | 897.00 | 1,391.50 |
| xvi | 5968 | 2,382.00 | 361.50 | 2,020.50 |
| xvii | 6126 | 2,995.50 | 1,379.50 | 1,616.00 |
| xviii | 6262 | 2,237.00 | 231.00 | 2,006.00 |
| xix | 6425 | 531.50 | 115.00 | 416.50 |
| xx | 6745 | 326.50 | 99.00 | 227.50 |
| xxi | 6911 | 1,878.50 | <u>165.00</u> | <u>1,713.50</u> |
|     |     |     | 11,397.50 | 22,659.50 |

C. <u>JASSMR's Fees From May 12, 2017 Through July 31, 2017</u>

The fee statement for AH from May 18, 2017 to July 27, 2017, is attached as Exhibit B (DE 155-2) to JASSMR's August 1, 2017 supplemental fee request (DE 155). AH's bills for that time frame total $5,808. Consistent with the Court's findings in Section V(B) above, this Court finds AH's bills excessive, duplicative of the work done by the Firm's professionals, and/or provided no material advancement of JASSMR's cause in these bankruptcy proceedings. The Court hereby disallows AH's bills totaling $5,808.

The Firm's fee statement from May 12, 2017 to July 31, 2017, is attached as Exhibit A (DE 155-1) to JASSMR's August 1, 2017 supplemental fee request (DE 155). The Firm's bills for that time frame total $9,397.25, exclusive of AH's billings and exclusive of the $3,000

15

Case 3:16-bk-04842-DPC    Doc 182    Filed 11/22/17    Entered 11/22/17 17:30:03    Desc
Main Document    Page 15 of 20

1 adequate protection amounts discussed in Section V(A) above. The Firm's fees are described in
2 five invoices comprising Exhibit A. The Court addresses each of these invoices below.

         (i)      <u>Invoice #7084 dated May 31, 2017, totaling $2,451</u>.

The Firm acknowledges this bill duplicates billings from their prior bills (DE 146-3) in the amount of $537.50. This bill includes $1,204.50 charged by CU and $759 by contract paralegal AH. As noted in Section V(A) above, these charges are excessive and duplicative of other work charged by the Firm and will be disallowed. The sum of $487.50 will be allowed from this invoice, but that amount is exceeded by the $537.50 duplicative amount so this invoice totals a net ($50).

         (ii)     <u>Invoice #7253 dated June 14, 2017, totaling $3,599.50</u>.

The Court finds FL's June 1, 2017 billing of .7 hours to be excessive. Only $65 (.2 x $325) shall be allowed from this time entry. FL's time entries from June 3, 2017 through June 5, 2017, total 4.8 hours preparing for and attending a hearing on June 5, 2017. The Court finds this time excessive and hereby disallows 2.8 hours ($910). The Court finds all of CU's time on this invoice to be duplicative of other work billed and/or office administrative work which should not be billed to a client or at least not allowable as a part of JASSMR's fee claim. CU's charges total $544.50 on this invoice, all of which are hereby disallowed. In summary, the amount of $1,617 is disallowed while the amount of $1,982.50 will be allowed on this invoice.

         (iii)    <u>Invoice #7432 dated June 28, 2017, totaling $350.25</u>.

The Court finds MS's charges ($41.25) are office administrative charges that must be disallowed. CU's charges ($16.50) are duplicative. The Court hereby disallows $57.25 from this invoice but allows $293.

         (iv)    <u>Invoice #7585 dated July 13, 2017, totaling $1,262</u>.

On July 5, 2017, FL confers with a contract paralegal for .2 hours. This task ($65) was unnecessary and will be disallowed. On July 6, 2017, FL conferred with the contract paralegal for .2 hours. For the same reasons, this charge ($65) will be disallowed. CU's $33 charge on July 6, 2017, is duplicative and will be disallowed. On July 12, 2017, FL has two unnecessary communications with a paralegal which billings (.3 x $325) will be disallowed

($97.50). In summary, $260.50 will be disallowed from this invoice and $1,001.50 will be allowed.

          (v)      <u>Invoice #7777 dated July 31, 2017, totaling $3,031</u>.

Because the Court finds all of CU's billings on this invoice to be office administrative work or duplicative of work done by others at the Firm, all of CU's billings are disallowed ($561). The Court also finds FL's time to be excessive or unnecessary to the following extent on the days identified below:

| Date | Hours × Rate | Amount |
|---|---|---|
| 7/14/17 | .4 x $325 | $130.00 |
| 7/17/17 | .6 x $325 | $195.00 |
| 7/18/17 | .6 x $325 | $195.00 |
| 7/19/17 | .4 x $325 | $130.00 |
| 7/22/17 | .2 x $325 | $ 65.00 |
| 7/24/17 | .1 x $325 | $ 32.50 |
| 7/27/17 | .2 x $325 | $ 65.00 |
| 7/28/17 | .2 x $325 | $ 65.00 |
| | 2.7 | $877.50 |

In summary, $1,438.50 will be disallowed from this invoice and $1,592.50 will be allowed.

<u>Summary of Exhibit A (DE 155-2) Attorneys' Fee Adjustments</u>

| | Invoice # | Billed | Disallowed | Net Allowed |
|---|---|---|---|---|
| i | 7084 | 2,451.00 | 2,501.00 | ($50.00) |
| ii | 7253 | 3,599.50 | 1617.00 | 1,982.50 |
| iii | 7432 | 350.25 | 57.25 | 293.00 |
| iv | 7285 | 1,262.00 | 260.50 | 1,001.50 |
| v | 7777 | 3,031.00 | 1,438.50 | 1,592.50 |
| | | | 5,874.25 | 4,819.50 |

## **CONCLUSION**

After reviewing all pleadings and billings presented by the parties, it is this Court's finding that, in this relative simple bankruptcy proceeding, JASSMR's legal fees were excessive and often failed to provide material benefit to JASSMR or to reasonably advance this bankruptcy case. This Court expects a lawyer's bills to reflect not only the actual quantity of time spent on a matter but also expects those bills to reflect a qualitative assessment of those charges. This is exactly what MEA did when his billing entries regularly reflected write offs of various charges. MEA wrote off a total of 3.0 hours over 19 different time entries from May 25, 2016 through July 18, 2017.

However, the Court could find no such qualitative assessment by FL. FL was by far the most active billing professional on this matter. The attached Exhibit A reflects the write offs located by this Court in all the Firm's billings.

In addition to the fees disallowed above, the Court further reduces the Firm's allowable fees of $27,479 by the sum of $2,479. Having been through the Firm's billings at length, the Court is left with the overall impression that FL's bills were not wholly reasonable under the circumstances of this case. This was not a complicated case nor were the issues facing the parties novel. The Court finds this additional reduction of the Firm's billings to be reasonable and appropriate. Again, it is the secured creditor's burden to demonstrate the fees sought are reasonable. To the extent noted above, this Court finds JASSMR only partially carried that burden of persuasion.[11]

Based on the foregoing, this Court hereby allows JASSMR's legal fees in the amount of $25,000. Since $4,500 of such fees were paid at the sale of JASSMR's collateral, JASSMR shall be entitled to an additional payment by the Debtors in the amount of $20,500. As indicated in the Amended Sale Order agreed to by the parties, such allowed fee claim shall be treated as a secured claim under the terms of Debtors' yet to be confirmed Chapter 13 Plan. To the extent there are insufficient funds to pay this claim from the remaining funds on hand from the sale closing, JASSMR shall have a priority expense up to the amount paid to the IRS from the closing, i.e. the sum of $25,127.06. The Court finds that payment to the IRS at closing came directly out of JASSMR's first priority secured claim. JASSMR is subrogated to the IRS claim which was paid with sale proceeds which should have rightfully been paid to JASSMR. To the extent the IRS claim was non-dischargeable under § 523(a), JASSMR's claim is likewise non-dischargeable. All claims of JASSMR not previously paid or allowed herein are hereby denied.

**DATED AND SIGNED ABOVE.**

---

[11] It has not escaped the Court's attention that Debtors' counsel estimate the <u>entire</u> amount they expect to charge this estate for their efforts in this bankruptcy case will total approximately $25,000. *See* Debtors' 2nd Plan, DE 168, p. 3 of 8, ¶ C(2). Of course, the 2nd Plan has not yet been confirmed by this Court.

**To be Noticed through the BNC to:**

Aubrey L. Thomas
Davis Miles McGuire Gardner
9 W. Cherry Ave., Suite B
Flagstaff, AZ 86001

Frederic G. Lemberg
Of Counsel
Andersen PLLC
17015 N. Scottsdale Rd., Suite 225
Scottsdale, AZ 85255

**EXHIBIT A**

| Atty | Rate | Time | Amount | Date |
|------|------|------|--------|------|
| CU | 165.00 | 0.30 | 49.50 | 05/25/16 |
| CU | 165.00 | 0.20 | 33.00 | 12/01/16 |
| CU | 165.00 | 0.50 | 82.50 | 12/09/16 |
| | | 1.00 | 165.00 | |
| | | | | |
| MEA | 280.00 | 0.70 | 196.00 | 05/25/16 |
| MEA | 280.00 | 0.20 | 56.00 | 06/09/16 |
| MEA | 280.00 | 0.20 | 56.00 | 06/20/16 |
| MEA | 280.00 | 0.10 | 28.00 | 06/30/16 |
| MEA | 280.00 | 0.10 | 28.00 | 07/02/16 |
| MEA | 280.00 | 0.10 | 28.00 | 07/06/16 |
| MEA | 280.00 | 0.10 | 28.00 | 07/09/16 |
| MEA | 280.00 | 0.30 | 84.00 | 07/14/16 |
| MEA | 280.00 | 0.10 | 28.00 | 08/03/16 |
| MEA | 280.00 | 0.10 | 28.00 | 08/09/16 |
| MEA | 280.00 | 0.10 | 28.00 | 09/07/16 |
| MEA | 280.00 | 0.10 | 28.00 | 01/17/17 |
| MEA | 280.00 | 0.10 | 28.00 | 02/04/17 |
| MEA | 280.00 | 0.10 | 28.00 | 03/30/17 |
| MEA | 280.00 | 0.10 | 28.00 | 04/27/17 |
| MEA | 280.00 | 0.10 | 28.00 | 05/09/17 |
| MEA | 280.00 | 0.10 | 28.00 | 05/09/17 |
| MEA | 280.00 | 0.10 | 28.00 | 06/17/17 |
| MEA | 280.00 | 0.20 | 56.00 | 07/18/17 |
| | | 3.00 | 840.00 | |